Opinion for the court filed by Circuit Judge MAYER. Concurring opinion filed by Circuit Judge PROST.
MAYER, Circuit Judge.
Plaintiffs appeal the judgment of the United States Court of Federal Claims granting the United States summary judgment that Plaintiffs do not qualify for coverage under the Equal Pay Act, 29 U.S.C. § 206(d)(1). Yant v. U.S., 85 Fed.Cl. 264 (2009). We affirm.

BACKGROUND

The thirty-five plaintiffs (“the Yant plaintiffs”) are current and former nurse practitioners (“NPs”) employed by the United States Department of Veterans Affairs (“VA”) in the Tennessee Valley Healthcare System (“TVHS”). The Yant plaintiffs brought suit against the VA under the Equal Pay Act, 29 U.S.C. § 206(d) *1371 et seq., alleging that, as predominantly female NPs, they are paid at a lower rate than the predominantly male physician assistants (“PAs”) in the THVS, performing jobs of equal skill, effort, and responsibility under similar working conditions. The VA hires NPs and PAs to fill the same TVHS positions, and the functional statements (i.e. job descriptions) are the same for NPs and PAs. NPs, unlike PAs, are required to have a master’s degree and are licensed through their states.
From 2004 to 2008, the percentage of female NPs in the TVHS ranged from 78.4% to 80.6%. For example, in July 2008, fifty-five of the sixty-nine NPs employed by the TVHS were females. During the same time period, the percentage of female PAs in the TVHS ranged from 40% to 44%. For example, in July 2008, eight of the twenty PAs employed by the TVHS were females.
Based on these statistics, the Yant plaintiffs allege that the VA discriminated against NPs “by paying them less than the predominantly male PAs.” They brought suit in the Court of Federal Claims alleging that, as a result of the VA’s conduct, they have suffered loss of compensation, fringe benefits, future earnings, reputation, self-esteem, time, money, and have also suffered humiliation and embarrassment.
The VA moved to dismiss the case arguing that the court lacked jurisdiction or, alternatively, that it was entitled to summary judgment because the Equal Pay Act does not apply to mixed-gender groups. The court found that it did have jurisdiction, but that the gender ratios in this case were sufficient to deny liability under the Equal Pay Act on summary judgment.
The Yant plaintiffs appeal the grant of summary judgment and the conclusion that they do not qualify for coverage under the Equal Pay Act. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review a grant of summary judgment by the Court of Federal Claims de novo. Suess v. United States, 535 F.3d 1348, 1359 (Fed.Cir.2008). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. When ruling on a motion for summary judgment, all of the non-movant’s evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant’s favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
In 1963, Congress amended the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, to prevent gender-based wage discrimination by enacting the Equal Pay Act. Specifically, the Equal Pay Act prohibits employers from discriminating on the basis of sex by paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work. See 29 U.S.C. § 206(d)(1). The Act provides:
No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is *1372 paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.
Id. (emphasis in original).
“The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve.” Corning Glass Works v. Brennan, 417 U.S. 188, 208, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). In order to establish a prima facie case of wage discrimination under the Equal Pay Act, plaintiffs “must show that an employer pays different wages to employees of opposite sexes ‘for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.’ ” Id. at 195, 94 S.Ct. 2223 (quoting 29 U.S.C. § 206(d)(1)).
Once plaintiffs have carried then* burden, “the burden shifts to the employer to show that the differential is justified under one of the Act’s four exceptions.” Id. at 196, 94 S.Ct. 2223. Specifically, the employer can avoid liability by proving that payment to employees of the opposite sex “is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.” 29 U.S.C. § 206(d)(1).
For purposes of this case, it is undisputed that the NP and PA positions require equal skill, effort, and responsibility, and are performed under similar working conditions. The gender make-up of these two groups of employees at the TVHS is, likewise, undisputed.
The Yant plaintiffs argue that they established a prima facie case and that the trial court erred by not finding that the gender ratios of the NPs and PAs were sufficient to raise a genuine issue of material fact. In response, the government relies heavily on remarks made by Representative Goodell in the legislative history of the Equal Pay Act. Specifically, the third item in the “examples and general guidelines” states that “[differences in pay between groups or categories of employees that contain both men and women within the group or category are not covered by this act.” 109 Cong. Rec. 9209 (1963).
We agree that summary judgment was appropriate, but for reasons other than gender ratios. As discussed below, the plaintiffs have failed to raise a genuine issue of material fact that the pay differential between NPs and PAs is either historically or presently based on sex.
Corning Glass Works guides our decision. From 1944 to 1966, Corning paid male night-shift inspectors more than female day-shift inspectors. The pay differential was implemented at a time when state law prohibited women from working at night. Id. at 191-92, 94 S.Ct. 2223. In 1966, Corning opened the night shift to female employees, but retained the higher wage for night inspectors. Id. at 205, 94 S.Ct. 2223. This allowed some women to enjoy the higher night salary after 1966. The day inspectors, however, remained entirely female and were compensated at the lower salary level.
The Supreme Court found that the night and day inspectors were engaged in “equal work,” and rejected Coming’s affirmative defense that the shift differential was a “factor other than sex” justifying the disparate wages. Id. at 203-05, 94 S.Ct. 2223. The Court held that this post-1966 disparity between night and day wages perpetuated the 1944-1966 wage differential made illegal by the Equal Pay Act. Id. at 209-10, 94 S.Ct. 2223.
A key distinction between Coming Glass Works and the case before us is how the differential in pay arose. In Coming *1373 Glass Works, “[t]he differential arose simply because men would not work at the low rates paid women inspectors.” Id. at 205, 94 S.Ct. 2223. In other words, the difference in pay was based solely on gender. As such, and consistent with the language of the statute, this was a violation of the Equal Pay Act. See 29 U.S.C. § 206(d)(1) (“No employer having employees subject to any provisions of this section shall discriminate ... between employees on the basis of sex ...(emphasis added)). This also finds support in the legislative history. See, e.g., H.R.Rep. No. 88-309, at 3 (1963) (noting that the Equal Pay Act “declares that wage differentials based solely on the sex of the employee are an unfair labor standard” (emphasis added)); 109 Cong. Rec. 9196 (1963) (statement of Rep. Thompson) (“[The Equal Pay Act] only applies to instances where men and women are doing work and where there is a wage differential based solely on sex.” (emphasis added)).
Here, the pay differential between NPs and PAs is based on two separate pay scales, one that is regionally based (the NP scale) while the other is nationally based (the PA scale). In fact, the Yant plaintiffs concede that prior to 1991 both NPs and PAs were paid on the same national salary scale. Based on the current NP and PA pay scales, the salary for NPs exceeds that of PAs in some areas of the country. In these areas, it is the male PAs that seek relief under the Equal Pay Act, alleging that the predominantly female NPs are paid more for equal work. See, e.g., Alverson v. United States, 88 Fed.Cl. 331 (2009). The result is that both male and female NPs seek succor under the Equal Pay Act in one region, and simultaneously male and female PAs in a different region seek the same relief.
The Yant plaintiffs did not present any evidence that the decision to pay PAs on a national scale and NPs on a regional scale had any basis in sex, historically or presently. Other courts have held that proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act, see, e.g., Peters v. City of Shreveport, 818 F.2d 1148, 1153 (5th Cir.1987), abrogated on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), but there is a fundamental difference between a showing of discriminatory intent and a showing that discrimination based on sex exists or at one time existed.
An examination of congressional intent clearly evidences that the burden is on the plaintiff to show the latter. “I should like to make it clear that the burden of proof to show a violation is on the Secretary of Labor; he must prove that any differential in pay which exists is actually based on sex, and he will have to sustain that burden of proof. I think this is a very important part of the legislative history.” 109 Cong. Rec. 9208 (1963) (statement of Rep. Griffin). Representative Goodell’s remarks, which echo this view, are instructive as he was the principal proponent of the bill. County of Washington v. Gunther, 452 U.S. 161, 171, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). He explained that “[t]he Secretary would have to establish a prima facie case showing that there is discrimination based on the factor of sex. If that is done, then, of course, the employer could rebut the proof and show that the differential was based upon factors other than sex.” 109 Cong. Rec. 9208 (1963); see also id. (“If [the employer] has a reasonable standard of differentiation, the [plaintiff] is not to come in, even, and judge the reasonableness or unreasonableness of this differentiation among employees, except as it shows a clear pattern of discrimination against sex.”).
Mere reliance on gender ratios of two groups does not establish discrimina *1374 tion based on sex. In fact, an example in the legislative history explicitly cautions against applying the Equal Pay Act in a situation similar to the facts here: “We do not have in mind the [plaintiff] going into an establishment and saying, ‘Look, you are paying the women here $1.75 and the men $2.10. Come on in here, Mr. Employer, and you prove that you are not discriminating on the basis of sex.’ ” Id. (statement of Rep. Goodell).
We are mindful of the Supreme Court’s admonition that permitting employers to avoid liability under the Equal Pay Act “by agreeing to allow some women to work ... at a higher rate of pay as vacancies occurred would frustrate, not serve, Congress’ ends.” Corning Glass Works, 417 U.S. at 208, 94 S.Ct. 2223. This case, however, is completely devoid of the historical discrimination at issue in Corning Glass Works, and the record before us does not suggest that the TVHS is hiring female PAs to avoid liability under the Equal Pay Act. An Equal Pay Act violation is established when an employee demonstrates past or present discrimination based on sex. There has been no such showing here. Therefore, the ratios of males to females are irrelevant. Because the Yant plaintiffs fail to raise a genuine issue of material fact that the pay differential between NPs and PAs is based on sex, they have failed to make a prime facie case.

CONCLUSION

Accordingly, the judgment of the Court of Federal Claims is affirmed.

AFFIRMED.