# United States Court of Appeals for the Federal Circuit

———————————

**MICHAEL ALAMO, EMMETT BRANNEN, WILLIAM BREZENSKI, IVY JIM BRINSON, BRIAN CALDWELL, THOMAS J DEMAJO, III, MARK DEUNGER, SANDRA DEUNGER, DOUGLAS L DILLER, BERNARD J FERMIN, TAMARA GRANDIA, CARL GREGORY, MARK HAHN, LISA ANN HAHN, KIMBERLY HARPER, CRYSTAL HENSLER, JUAN HERNANDEZ, WILLIAM J. JOHNSON, FLOYD JUSTICE, MARGARET KING, GLORIA D. LONG, JIM OCHOA, JAMES G. OOMS, ARTURO RINCONES, THOMAS L. ROBERTS, WARREN F. SCRIBNER, II, BRIAN TINER, CRAIG R. WILCOX, JAMES WILLIS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2015-5149

———————————

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00211-LKG, Judge Lydia Kay Griggsby.

———————————

Decided: March 9, 2017

———————————

JASON I. WEISBROT, Snider & Associates, LLC, Baltimore, MD, argued for plaintiffs-appellants. Also represented by JACOB Y. STATMAN.

EMMA BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM; REBECCA E. AUSPRUNG, Civilian Personnel Branch, United States Army Litigation Division, Washington, DC.

_____

Before PROST, *Chief Judge,* REYNA and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Appellants, current and former Army emergency medical technicians and paramedics, appeal the Court of Federal Claims' determination that the government properly compensates them for their regularly scheduled overtime work under the Fair Labor Standards Act. Because we find that the government employs the correct methodology to determine Appellants' pay, we affirm.

I

During the relevant period, the Army employed Appellants (EMTs) to provide emergency medical services at Fort Stewart, Liberty, Georgia. Before October 2012, the EMTs were generally scheduled for a compressed schedule consisting of 24 hours on-duty followed by 48 hours off-duty. After October 2012, the EMTs switched to a schedule consisting of two 48-hour workweeks. Because the EMTs worked a schedule of more than 40 hours in one week, they were entitled to FLSA overtime pay. For a typical biweekly pay period, the government compensated the EMTs with (1) basic pay under the Federal Employees Pay Act (also known as Title 5); (2) standby duty premium

pay under Title 5; and (3) FLSA overtime pay for regularly scheduled overtime.  J.A. 38, 40.[1]

The EMTs filed suit in the Court of Federal Claims, alleging that the government underpaid them by using an incorrect formula to calculate their FLSA overtime.  The parties cross-moved for summary judgment.  The court granted the government's motion and denied the EMTs' motion, finding that no underpayment occurred because the government applied the correct methodology to calculate the EMTs' pay.  The EMTs timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

"We review the Court of Federal Claims' grant of summary judgment de novo.  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Crooker v. United States*, 828 F.3d 1357, 1360 (Fed. Cir. 2016) (internal citations and quotation marks omitted).

## A

Under the FLSA,[2] an agency must compensate its overtime-eligible employees "for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to

---

[1]    Several factors not relevant here may affect the biweekly calculation of an EMT's pay for a given week.  For example, an EMT may work unscheduled overtime or take some type of paid or unpaid leave.  We confine our discussion to the three areas of pay we have identified.

[2]    Because the parties agree that the relevant OPM regulations fairly implement their respective statutes, we refer to the FLSA and its implementing regulations together as the FLSA, and to Title 5 and its implementing regulations together as Title 5.

one and one-half times the employee's hourly regular rate of pay," subject to certain exceptions that do not apply here. 5 C.F.R. § 551.501(a); *see also* 29 U.S.C. § 207(a)(1). If an employee qualifies for FLSA overtime, he or she is entitled to "(1) [t]he straight time rate of pay times all overtime hours worked; plus (2) [o]ne-half times the employee's hourly regular rate of pay times all overtime hours worked." 5 C.F.R. § 551.512(a).

The first question presented is whether the EMTs receive "the straight time rate of pay times all overtime hours worked" when the government pays them annual premium standby pay in addition to basic pay. We find that they do, and therefore, that the government calculated the EMTs' pay correctly.

 Ordinarily, "[a]n employee's 'straight time rate of pay' is equal to the employee's rate of pay for his or her position (exclusive of any premiums, differentials, or cash awards or bonuses)." *Id.* § 551.512(b). But the EMTs' straight time rate of pay is calculated differently because they receive annual premium standby pay in addition to their basic pay. The Army pays the EMTs standby pay because their job requires them "regularly to remain at, or within the confines of [their] station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work." *Id.* § 550.141; *see* 5 U.S.C. § 5545(c)(1). That is, the EMTs receive standby pay because they must remain at their duty stations longer than 40 hours per week. *See* 5 C.F.R. § 550.143(c). Thus, because the EMTs receive standby pay, their "straight time rate of pay" is "equal to basic pay plus annual premium pay divided by *the hours for which the basic pay plus annual premium pay are intended*." *Id.* § 551.512(b) (emphasis added).

We conclude that all regularly scheduled hours that the EMTs work, including all regularly scheduled overtime hours, are "the hours for which basic pay plus annu-

al premium pay is intended." The EMTs receive standby pay to compensate for being on duty for "more than 40 hours a week," *id.* § 550.143(c), which is also what overtime compensates. Yet, standby pay compensation is "not received in return for any particular hours of work," but instead, "is a function of the government's recognition that" the EMTs "don't work the typical work schedule of the federal system." *Zumerling v. Devine*, 769 F.2d 745, 751 (Fed. Cir. 1985). Accordingly, the EMTs' pay (basic plus standby pay), taken together, compensates them the same for hour 1, hour 41, and hour 70 in a single workweek. This is because standby pay balances the regular inconvenience to the EMTs of confinement to a duty station for longer than ordinary work hours and the reality that they may spend these hours sleeping, reading, eating, playing games on a smartphone, and the like. As a result, standby pay compensates EMTs for the fact that they are on-duty for more than 40 hours. And by prescribing a separate formula for calculating the straight time rate of pay when an employee receives standby pay, § 551.512(b) reflects OPM's intent to cover all regularly scheduled hours (including regularly scheduled overtime hours) through the combination of basic and standby pay. Therefore, the combination of basic and standby pay properly compensates straight time for all regularly scheduled hours that the EMTs work.

The government also does not run afoul of §§ 551.512 and 551.513, as the EMTs contend. Section 551.512(c) requires the government to pay employees "at a rate at least equal to the employee's straight time rate of pay for all nonovertime hours of work in the workweek," and § 551.513 mandates that employees are paid their FLSA overtime in addition to other pay. As already discussed, the EMTs receive the additional half-time bonus on top of their straight time rate of pay, which itself covers all hours worked. Accordingly, the government's formula satisfies both provisions.

To the extent that the regulatory language is unclear, we find that contextual analysis of Title 5 and the FLSA resolves any ambiguity. *Cf. King v. Burwell,* 135 S. Ct. 2480, 2492 (2015) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988))).   Broadly speaking, the FLSA gives employees their normal compensation for a regularly scheduled overtime hour, plus an additional half-time bonus.   The government's calculation does the same: it gives EMTs their normal compensation for regularly scheduled overtime through the payment of basic plus premium pay and pays the EMTs an additional half-time bonus.   And, by design in Title 5, Congress and OPM intended federal employees working standby hours to receive less pay than those who actively work during their entire regularly scheduled overtime.[3]   *See* 5 U.S.C. § 5545(c)(1) (allowing an agency to require an employee to "receive premium pay for [standby] duty . . . instead of premium pay provided by other provisions of this sub-chapter, except for irregular, unscheduled overtime duty in excess of his regularly scheduled weekly tour"); 5 C.F.R. § 550.141 ("An agency may pay premium pay on an annual basis, instead of the premium pay prescribed in this subpart for regularly scheduled overtime . . . ."). That design would be frustrated if the EMTs were to receive an additional FLSA straight-time payment for their over-time.

---

[3]   Although the FLSA does not distinguish between standby and actively worked time when defining "work," Title 5 draws such a distinction.

Moreover, we must interpret the governing regulations in light of OPM's wide discretion to prescribe rules for federal employee pay. As we have noted before, Congress created a "flotsam of incomplete legislation" when it extended the FLSA to cover federal employees already covered by Title 5. *Abreu v. United States*, 948 F.2d 1229, 1236 (Fed. Cir. 1991). But because Title 5 and the FLSA "do not mesh with the machined precision of the gears in a Swiss watch," we interpret these statutes and regulations in a way that "ensure[s] that OPM has put together the various pieces of pay entitlement in a way that eliminates gaps and minimizes overlaps." *Id.* Here, giving the EMTs additional straight time payment would create a significant "overlap," as they would receive a full time-and-a-half overtime payment for the same work that their standby pay already covers. The EMTs have not demonstrated that Congress or OPM intended federal workers to receive such a windfall, particularly where the very nature of standby work means that the employees are not actively working all hours for which they receive pay.

Finally, the Department of Labor's regulations applicable to private-sector, salaried, non-exempt employees support this result. *Cf. Abreu*, 948 F.2d at 1231 n.6 (describing Congress' intent, when delegating authority to OPM to administer the FLSA, to assure consistency with Department of Labor's rules for private sector). The EMTs' annual basic plus premium pay, paid biweekly, is akin to an annual salary that the EMTs accept to compensate for all regularly scheduled hours. Under 29 C.F.R. § 778.114(a), a private employer can satisfy its FLSA obligations by paying "extra compensation, in addition to such salary, for all [regularly scheduled] overtime hours worked at a rate not less than one-half his regular rate of pay." The rationale is written directly into the regulation: "Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been

compensated at the straight time regular rate, under the salary arrangement." *Id.* That same logic applies here because the additional standby premium pay already compensates for the unusual nature of the EMTs' schedule. Accordingly, the additional half-time payment sufficiently fulfills the government's FLSA overtime obligation.

## B

The EMTs also argue that the Army miscalculated the EMTs' regular rate of pay when determining the half-time portion of their FLSA pay. *See generally* 5 C.F.R. § 551.512(a)(2) (describing half-time portion). The EMTs concede that their argument fails if we find, as we have, that the Army properly paid them the "straight time" portion of overtime under the FLSA. Appellants' Br. at 32–33. Accordingly, we conclude that the Army properly calculated the EMTs' regular rate of pay.

## C

Finally, the EMTs argue that they are entitled to have their FLSA overtime calculated on a biweekly rather than weekly basis. However, the plain language of the applicable regulations requires FLSA overtime to be calculated on a weekly basis. An employee is entitled to overtime "for all hours of work in excess of 8 in a day or 40 in a *workweek*." 5 C.F.R. § 551.501(a) (emphasis added). For employees who are subject to a compressed work schedule (like the EMTs), a "workweek" is "the same as the administrative workweek defined in [5 C.F.R.] § 610.102." *Id.* § 551.501(b). Section 610.102 defines "[a]dministrative workweek" as "any period of 7 consecutive 24-hour periods designated" by an agency head. Accordingly, the Army correctly calculates the EMTs' pay on a weekly basis.

## III

Because the government employs the correct methodology to calculate the EMTs' pay, we affirm the Court of Federal Claims' judgment.

**AFFIRMED**